Donna ZAHORIK, Judith Long-Laws, Jacqueline Livingston, Antonia Glasse, and Charlotte Farris, Plaintiffs,

v.

CORNELL UNIVERSITY, Defendant.

No. 80–CV–455.

United States District Court, N.D. New York.

March 24, 1983.

J. Anthony Gaenslen, Ithaca, N.Y., John De J. Pemberton, San Francisco, Cal., Seidenberg & Strunk, Syracuse, N.Y., Bixler & Stumbar, Ithaca, N.Y., for plaintiffs; Faith A. Seidenberg, Syracuse, N.Y., Elizabeth B. Yanof, Ithaca, N.Y., of counsel.

Bond, Schoeneck & King, Syracuse, N.Y., Hogan & Hartson, Washington, D.C., for defendant; John J. Dee, Paul M. Sansoucy, Syracuse, N.Y., Sherwin J. Markman, Peter W. Tredick, Patricia R. Ambrose, Karen L. McClearycale, Washington, D.C., of counsel.

## MEMORANDUM–DECISION AND ORDER

MUNSON, Chief Judge.

In *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438 (2d Cir.1980), the Second Circuit reversed a grant of summary judgment by this Court. One of the main reasons for the reversal was the fact that the party opposing the motion had not had a full opportunity to complete discovery and gain "access to potentially favorable information." *Id.* at 445. In the present case, the Court has before it defendant's motion for summary judgment as to plaintiffs' tenure claims and plaintiffs have assured the Court that they require no additional information through discovery. It is with this understanding that the Court treats defendant's motion.

Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, provides that it shall be an unlawful employment practice for an employer:

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or

(2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of

such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e-2(a). In the instant case, plaintiffs Zahorik, Glasse, Long-Laws, and Farris all claim that defendant Cornell University denied them positions as tenured members of the faculty because of their sex in violation of Title VII. This action was commenced on June 12, 1980, nearly three years ago, and has already been the subject of three lengthy decisions by this Court. *Compare Lieberman v. Gant,* 474 F.Supp. 848, 852 (D.Conn.1979), *aff'd,* 630 F.2d 60 (2d Cir.1980).

█ In order to succeed on a Title VII claim, a plaintiff must first make out a prima facie case of discrimination. According to the Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), the plaintiff must show (1) that he belongs to a class of persons protected by Title VII; (2) that he applied for and was qualified for a job for which the employer was seeking applicants; (3) that despite his qualifications, he was rejected; and (4) that after his rejection the position remained open and the employer continued to seek applications from persons with plaintiff's qualifications. *Id.* at 802, 93 S.Ct. at 1824. Although the *McDonnell Douglas* case dealt with race discrimination, it applies with equal force to discrimination based on sex. *Lieberman v. Gant,* 630 F.2d at 63.

█ Once a Title VII plaintiff establishes his prima facie case, the burden then shifts to the defendant to show that the reason for the challenged action was due to some legitimate, nondiscriminatory purpose. If the defendant makes this showing through the introduction of admissible evidence, the burden then shifts back to the plaintiff to prove by a preponderance of the evidence that the reasons offered were not true and were in reality a pretext for discrimination. *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 254–55, 101 S.Ct. 1089, 1094–95, 67 L.Ed.2d 207 (1981) (citing *McDonnell Douglas Corp. v. Green,* 411 U.S. at 802–03, 93 S.Ct. at 1824–25).

In support of its motion for summary judgment, defendant Cornell University has presented this Court with a voluminous amount of material all designed to show that the individual plaintiffs were not promoted to tenure for legitimate, nondiscriminatory reasons. This material consists of affidavits and exhibits compiled from various sources within the defendant University. In response to this motion, plaintiffs have submitted a lengthy memorandum appended with various affidavits and exhibits. Plaintiffs' "proof" in this regard is the key to determination of defendant's motion. Although the *McDonnell Douglas* Court and subsequently the *Burdine* Court spoke of Title VII defendants presenting their nondiscriminatory reasons for actions taken *after* a plaintiff has presented his prima facie case, this Court has been presented with defendant's proof via its motion *prior* to the establishment of plaintiffs' prima facie cases. Thus, the Court must examine the *McDonnell Douglas* burdens in a somewhat "backwards" fashion.

█ Cornell argues that each plaintiff, Donna Zahorik, Antonia Glasse, Judith Long-Laws, and Charlotte Farris, failed to receive tenure because they did not meet the rigorous test set by the University. Indeed, plaintiffs freely admit that the standard for the granting of tenure is one of excellence and that Cornell is entitled to great deference in making what has been termed a "life-long commitment." *Lieberman v. Gant,* 630 F.2d at 64. In this regard, Title VII does not mandate that an employer hire the best possible candidate for a position. Rather, the employer need only show that his choice was based on "neutral reasons" and that such reasons were not in reality a pretext for discrimination. *Id.* at 65.

█ Cornell's proof that its tenure decisions were based on factors other than discrimination is compelling. This Court has reviewed every document submitted to it and is convinced that plaintiffs were treated fairly and neutrally by defendant. The affidavits and exhibits presented by defendant suggest that each plaintiff was

competent, yet did not meet Cornell's rigorous standard for tenure. It should be noted that many of the faculty members who reviewed the various plaintiffs' applications expressed the difficulty they had in reaching an adverse conclusion. While the Court is sympathetic to the plaintiffs' positions and can well imagine the traumatic consequences of an adverse tenure decision, the closeness of any given tenure decision does not amount to a violation of Title VII.

As this Court noted in its most recent Memorandum-Decision and Order dated January 11, 1983, the courts must "steer a careful course between excessive intervention in the affairs of the university and the unwarranted tolerance of unlawful behavior." *Powell v. Syracuse University*, 580 F.2d 1150, 1154 (2d Cir.), *cert. denied*, 439 U.S. 984, 99 S.Ct. 576, 58 L.Ed.2d 656 (1978). Moreover, the Court is mindful of a university's prerogative "to determine for itself on academic grounds who may teach," *Sweezy v. New Hampshire*, 354 U.S. 234, 263, 77 S.Ct. 1203, 1218, 1 L.Ed.2d 1311 (1957) (Frankfurter, J., concurring) and that such prerogative "is an important part of our long tradition of academic freedom." *Lieberman v. Gant*, 630 F.2d at 67.

It would be an understatement to say that Cornell has come forward with legitimate, nondiscriminatory reasons for plaintiffs' failure to receive tenure. In opposition to the motion, plaintiffs have done little more than to make bald assertions unsubstantiated by any facts whatsoever. For example, plaintiffs assert that the statistical evidence they have submitted conclusively establishes a differential tenure rate at Cornell and that the Court can infer discrimination from this differential. This statistical showing comes from a press release issued by defendant. It should be noted that the figures contained in the release only involve the tenure decisions of 19 women over a period of ten years prior to 1978. Plaintiffs have not offered the report on which this press release is based, nor have they indicated a desire to conduct more discovery prior to the resolution of this motion. Similarly, plaintiffs' suggestion that this motion is premature due to uncompleted discovery is disingenuous. Plaintiffs' counsel repeatedly advised the Court that no further discovery was required for this motion and plaintiffs cannot be heard to complain that their proof is not all that it might be.

As to the individual cases of tenure review, the Court is unconvinced that plaintiffs received less than fair evaluations by their respective departments. Plaintiffs' "direct evidence of discrimination" consists in large part of the reports of an investigator from the New York State Division of Human Rights. According to this investigator, certain of the plaintiffs were more qualified for the positions they sought than were the males who ultimately received the appointments. Even if this Court were presented with sworn affidavits by persons involved in the tenure review process that plaintiffs were more qualified than "comparable males," plaintiffs' case would have to fail. Again, Title VII does not require that the most qualified person for a position get the job. In addition, the Court need not sit as a "Super Tenure-Review Committee" and review each applicant for a position in the hopes of finding some evidence of unlawful discrimination. *Keddie v. Pennsylvania State University*, 412 F.Supp. 1264, 1270 (M.D.Pa.1976).

Other proof submitted by plaintiffs consisted of various letters by persons involved in the tenure review process to their respective department chairpersons. From these letters, the Court is supposed to infer discrimination. Upon a thorough review of all of plaintiffs' submissions, the Court is unable to take plaintiffs' suggestion and finds no inference of discrimination. Finally, the Court has not been presented with a shred of proof to indicate that plaintiffs' files may have been "sanitized."

"The burden of establishing a prima facie case of disparate treatment is not onerous." *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. at 253, 101 S.Ct. at 1093. A plaintiff need only prove by a preponderance of the evidence "that she

applied for an available position for which she was qualified, but was rejected under circumstances which give rise to an inference of unlawful discrimination." *Id.* In the present case, plaintiffs have failed on both aspects of the prima facie case test. First, they have not shown that they were qualified for the positions that they sought. Tenure is a difficult plateau to achieve and it is a hard fact of life that not all applicants to tenure can receive it. Defendant's proof on this score indicates that plaintiffs were given long and careful consideration in the tenure review process and that they simply did not meet Cornell's established criteria for promotion to tenure. Second, plaintiffs have failed to show that the circumstances surrounding their rejection give rise to an inference of discrimination. Rather, the Court has only been presented with conflicting positions taken by the faculty at Cornell. While a close case may enhance plaintiffs' frustrations, it simply does not give rise to a Title VII violation.

The law in this Circuit is clear that on a motion for summary judgment the moving party has the burden of demonstrating that there is no genuine issue as to any material issue of fact and that he is entitled to judgment as a matter of law. *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d at 444–45. Plaintiffs may not simply rest on the pleadings, but must come forward with specific facts showing that there is a genuine issue for trial. Fed. R.Civ.P. 56(e). Plaintiffs have not availed themselves of the procedure in Fed.R. Civ.P. 56(f) and requested an opportunity to conduct more discovery prior to this Court's resolution of this motion. Instead, plaintiffs steadfastly maintained that the Court had before it sufficient information to dispose of the motion. The Court agrees and hereby grants defendant's motion for summary judgment on the tenure claims of plaintiffs Donna Zahorik, Antonia Glasse, Judith Long-Laws, and Charlotte Farris.

It is so Ordered.